McCALLUM, J.
*572 Lindsey French, a trusty[1] who was serving his hard labor sentence at the Claiborne Parish Detention Center ("CPDC"), was injured while operating a tractor as part of a grass-cutting crew for the Claiborne Parish Police Jury ("Police Jury"). French's lawsuit against the Police Jury was dismissed on summary judgment because there was no genuine issue of material fact that French was an employee of the Police Jury at the time of his injury, making workers' compensation his exclusive remedy against the Police Jury.
We affirm.
FACTS
French was housed at the CPDC while awaiting trial on drug and firearm charges. On February 18, 2014, French pled guilty to distribution of cocaine and was sentenced to nine years at hard labor. He remained at the CPDC as an inmate of the Louisiana Department of Safety and Corrections following his conviction and sentencing.
According to Assistant Warden John Goodwin, the Claiborne Parish Sheriff ("Sheriff") and the Police Jury had an agreement whereby inmates at the CPDC could be released to work for the Police Jury as part of the highway chipper crew ("crew") that maintained the rights of way along roads in Claiborne Parish. These inmates, or trusties, picked up trash, mowed grass using bush hogging equipment, and removed storm debris.
After French applied for trusty status and was evaluated by the trusty board, he became a trusty on March 3, 2014, and his prison status was changed to minimum security. French was presented with the option of working on the crew because he claimed he could drive a tractor. French accepted the offered assignment.
French, along with five other trusties from the CPDC, operated tractors provided by the Police Jury to bush hog grassy areas alongside roads. The trusties were transported by the Police Jury. On mornings that the trusties would work on the crew, a foreman or inmate supervisor would normally arrive at the CPDC between 6:45 and 7:00 a.m. to pick up the trusties. The foreman or inmate supervisor would return the inmates to the CPDC, usually between 2:30 and 3:30 in the afternoon depending on the duration of that day's work.
On June 10, 2014, the tractor being operated by French struck an obscured tree stump. French was not wearing a seatbelt at the time. He recalled that when the tractor bucked from the impact, he fell through an opening where a tractor step should have been, and landed on the ground. His pelvis was fractured when a tractor wheel then rolled onto him.
*573 On March 12, 2015, French filed a lawsuit against the Police Jury and the Sheriff. The Sheriff was subsequently dismissed from the lawsuit on a joint motion. French alleged that the Police Jury was liable for: (i) failing to adequately train inmates in the operation of the work machinery; (ii) failing to adequately supervise the inmates to ensure they were following proper safety procedures; (iii) failing to adequately inspect the area to be bush hogged for hidden dangers; (iv) instructing French to bush hog an area that did not require it; (v) instructing inmates not to wear seatbelts or telling them it was more dangerous to wear a seatbelt; (vi) failing to maintain the tractor so that it could be operated safely; and (vii) failing to provide a safe work place.
On November 21, 2015, the Police Jury filed a motion for summary judgment asserting that it was immune from liability under La. R.S. 15:708. On July 21, 2017, the Police Jury filed a supplemental motion for summary judgment asserting in the alternative that French's sole remedy against it was in workers' compensation. In support of the motion, the Police Jury submitted excerpts from the depositions of French; Goodwin; Tommy Durrett, the Superintendent of the Police Jury; and Travis Kimp, an inmate supervisor for the Police Jury.
French argued in opposition to the motion that he was more akin to a volunteer than an employee of the Police Jury. French further argued that he never entered into an employment relationship, and there was no agreement as to hours worked, pay rate, or other usual employment concerns. In opposition to the motion, French submitted various exhibits including his affidavit and excerpts from his deposition, as well as Durrett's deposition and excerpts from the depositions of Kimp, Goodwin, and Eric Kennedy, another inmate supervisor for the Police Jury.
The trial court granted the Police Jury's motion for summary judgment on the basis that French's exclusive remedy was in workers' compensation because there was no genuine issue of material fact that he was an employee of the Police Jury. French appealed.
DISCUSSION
A summary judgment is reviewed on appeal de novo , with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e. , whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau , 2007-1726 (La. 2/26/08), 977 So.2d 880.
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
Because the workers' compensation statutes are in derogation of the universal right to sue for damages provided by La. C.C. art. 2315, the immunity provisions must be strictly construed. Smith v. Brown , 2011-1749 (La. App. 1 Cir. 8/15/12), 97 So.3d 1186, writ denied , 2012-2015 (La. 11/16/12), 102 So.3d 39.
La. R.S. 23:1044 states that "[a] person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter." See La. R.S. 23:1034 regarding the application of the workers' compensation provisions to public employees. This presumption, however, may be rebutted upon proof that there was no contract of employment, expressed *574 or implied, between the alleged employee and the alleged employer. Young v. Royal Jones & Assocs. , 521 So.2d 798 (La. App. 2 Cir. 1988).
In support of its motion, the Police Jury did not submit any evidence of an employment contract between French and the Police Jury.[2] Instead, the Police Jury asserted that the employment relationship is apparent when the relevant factors are considered.
When determining whether an employment relationship exists, the most important element to be considered is the right of control and supervision over the individual. Rogers v. Louisiana Dept. of Corr. , 43,000 (La. App. 2 Cir. 4/30/08), 982 So.2d 252, writ denied , 2008-1178 (La. 9/19/08), 992 So.2d 931. The factors to be considered in assessing the right of control are the selection and engagement of the worker, the payment of wages, and the power of control and dismissal. Id. No single factor is conclusive; instead, the totality of the circumstances must be considered. Cormier v. McNeese State Univ. , 2013-12 (La. App. 3 Cir. 11/13/13), 127 So.3d 66. The burden of proof is on the party seeking to establish an employer-employee relationship. Hillman v. Comm-Care, Inc. , 2001-1140 (La. 1/15/02), 805 So.2d 1157.
In Clinton v. Reigel By-Products, Inc. , 42,497 (La. App. 2 Cir. 9/19/07), 965 So.2d 1006, an inmate at the Caddo Correctional Center worked at the defendant's plant as part of a work-release program.[3] Affirming the trial court's grant of the defendant's motion for summary judgment, this court ruled that the inmate was the defendant's employee for purposes of workers' compensation exclusivity because the defendant paid the inmate directly, the defendant supervised the inmate at the job site, and a work-release agreement considered the inmate to be an employee of the defendant.
In Reynolds v. Louisiana Plastic , 44,803 (La. App. 2 Cir. 10/28/09), 26 So.3d 149, writ denied , 2009-2805 (La. 3/5/10), 28 So.3d 1013, Reynolds, a work release inmate at the Ouachita Parish Correctional Center, was found to be an employee of Louisiana Plastic. This court noted that Louisiana Plastic controlled Reynolds' pay rate and the number of hours he worked, instructed him on how to do his job, and supervised him. Reynolds was also told about Louisiana Plastic's policies and procedures. A work release agreement executed between the company and the Ouachita Parish Sheriff identified Reynolds as an employee of Louisiana Plastic.
An inmate in a work release program was found to be a special employee of the facility where he worked in Rogers v. Louisiana Dept. of Corr. , supra . Rogers was a Department of Corrections inmate housed at the Webster Parish Jail. Labor Finders, an employment service which found temporary employment for work release inmates at area businesses, placed him at Springhill Pallet Company. Rogers was fatally injured when the forklift that he was driving tipped over. This court concluded that there was no genuine issue of material fact that Rogers was the special employee *575 of Springhill. Springhill established that it controlled Rogers' activities while at the plant, had the power and authority to dismiss him, and furnished the place of employment and related equipment. Even though Rogers was paid through Labor Finders, the amounts that he was paid were based upon time sheets that were provided by Springhill. This court also noted that Rogers made no showing disputing those facts in opposition to the motion for summary judgment.
Selection and engagement of French
Goodwin explained that inmates filled out a request form in order to become a trusty. An inmate would be considered for trusty status only if he had a good disciplinary record. The inmates were evaluated to determine if they were qualified to work an outside job as a trusty.
The Police Jury used only inmates to operate the tractors while bush hogging. None of the inmates applied to work for the Police Jury, and the Police Jury had no input into which inmates were selected to work on the crew. Kennedy would call Warden Johnny Sumlin at the CPDC and let Sumlin know that he needed a specific number of tractor drivers. Kennedy, who would normally call a month in advance of needing the drivers, never requested more than six drivers. The CPDC would normally send trusties who already knew how to operate a tractor. The trusties would usually be screened before Kennedy called, but sometimes they were screened after tractor drivers were requested.
According to Goodwin, outside work for trusties from CPDC was not limited to the highway chipper crew. Some trusties worked for a couple of private employers as part of the Department of Corrections work release program. Others worked for the Town of Homer.
Payment of wages
LaSalle Management paid French $3 per week for his work on the crew. The same amount of money was paid by LaSalle to the CPDC trusties regardless of whether they worked on the crew or washed dishes at the CPDC, and this was the only compensation that the trusties received. If a trusty did not work, he would lose his trusty status and not get paid.
Neither Goodwin nor Tommy Durrett, the Superintendent for Claiborne Parish, knew if Claiborne Parish paid the Sheriff for the labor provided by the trusties. Goodwin did not know if the trusties assigned to the crew received a Form 1099 or W-2 from Claiborne Parish.
Power of dismissal
The Police Jury could dismiss a trusty from the crew if he was not performing his job or had an attitude problem. Sometimes it became clear during training that the trusty could not operate the tractor. A call would usually be placed to the CPDC to let them know a trusty was being difficult and needed to be picked up. In other instances, a trusty would be told by the Police Jury that he would not be returning to the crew.
French had a parole eligibility date of September 18, 2015, a good time release date of April 25, 2016, and a fulltime release date of September 20, 2021. Although French could have been transferred to a state correctional facility at any time, Goodwin would have expected French to serve out his sentence at the CPDC if he had not been injured.[4] If a trusty is transferred, the CPDC selects a replacement.
Power of control
The Police Jury handled the transportation of the trusties between the CPDC and where they were working. The Police Jury *576 had total control over the trusties from the time they were picked up until they were returned, and was completely responsible for supervising them while they worked as no deputies from the Claiborne Parish Sheriff's Office were supervising them at the time. While Kennedy, Kimp, and Durrett had taken a training course and were auxiliary deputies, they were not armed while with the trusties and lacked any defensive weapons or handcuffs. The CPDC would be called to handle any trusty who attempted to escape or was involved in a fight.
The Police Jury provided training to the trusties on how to operate the tractors for bush hogging. The Police Jury also furnished the place to work and equipment to be used. According to French, they would break for a lunch provided by the Police Jury on the side of the road.
French relies on Cormier v. McNeese State Univ. , 2013-12 (La. App. 3 Cir. 11/13/13), 127 So.3d 66, to support his contention that French was not an employee of the Police Jury. In that matter, the court of appeal found that the WCJ manifestly erred in finding that Cormier, a trusty at the Calcasieu Parish Correction Center who was injured while cleaning a tailgating area at McNeese State University, was an employee of the university. Under the terms of the trusty agreement between the university and the Calcasieu Parish Sheriff, the university was responsible for transporting the trusties to and from their work locations, providing lunch for the trusties, and ensuring that the trusties remained on university premises, did not possess contraband, and did not have contact with visitors while working. Cormier did not submit an application to the university; instead, the Sheriff's Office vetted Cormier through its application process, and then assigned Cormier to the group which worked at the university. The Sheriff determined the hours that the trusties would work. The trusties were in the university's custody and control from when they were picked up until they were returned. If the university was dissatisfied with a trusty's job performance, they would notify the Sheriff's Office and the trusty would be removed from that job. Other than using riding lawnmowers, the trusty performed the same tasks as compensated employees of the university who were working alongside them.
Cormier can be readily distinguished. Unlike Cormier, French received monetary compensation, albeit from LaSalle. On "regular detail" days, the university was responsible for transporting the trusties to and from the campus, and for supervising the trusties. However, there was a "special detail" on the day that Cormier was injured. On those days, the Sheriff's Department transported the trusties to the university, and a deputy stayed to prevent the trusties from leaving. The supervision of French and the other trusties on the crew was left up to the Police Jury. Another difference is that the Police Jury determined whether and for how long the trusties worked on a particular day. In Cormier , the Sheriff fixed the hours worked by the trusty.
The Police Jury exercised control in supervising, training, and dismissing the trusties that were selected by the CPDC to work on the highway chipper crew. Mindful that no single factor is conclusive and that the totality of the circumstances must be considered, we conclude that there is no disputed issue of material fact that French was an employee of the Police Jury.
French also contends that as a prisoner, he was not free to consent to employment with the Police Jury. In support of his argument, he cites *577 Jones v. Houston Fire & Cas. Ins. Co. , 134 So.2d 377 (La. App. 3 Cir. 1961), and Turner v. Peerless Ins. Co. , 110 So.2d 807 (La. App. 1 Cir. 1959). The inmates in those cases were injured while performing compulsory labor at the state penitentiaries where they were serving their sentences. In contrast, we note that French volunteered to become a trusty and agreed to work on the crew. In fact, he testified that he recalled turning down a work release job that he had been offered.
Finally, French argues that he was akin to a volunteer for the Police Jury as he did not expect compensation from them. This argument is without merit. French received some monetary compensation for his toil, regardless of its source. Moreover, even when an individual does not receive compensation for services performed, that fact alone is not determinative of an employer-employee relationship. See Gotto v. ARA Living Center , 570 So.2d 1172 (La. App. 5 Cir. 1990), writs denied , 571 So. 2d 634 (La. 1990).
CONCLUSION
Based on the foregoing, we conclude that the trial court did not err in granting the Police Jury's motion for summary judgment. At French's costs, the judgment is AFFIRMED.[5]
APPLICATION FOR REHEARING
Before Moore, Pitman, Cox, Stephens, and McCallum, JJ.
Rehearing denied.

Various cases have alternately used the "trustee" for the position held by Petitioner. However, our review of the Oxford English Dictionary indicates that "trusty" is the appropriate term.

No paperwork was completed on behalf of the Police Jury when the inmates were assigned to it. According to Kennedy, French never entered into any kind of written agreement with the Parish to work on the right of way. Goodwin was unaware of any paperwork that a trusty signed to work on the highway chipper crew.

La. R.S. 15:711 authorizes work release programs for certain inmates and specifies that the program is to be administered by the sheriff of the parish where the inmate is housed.

A medical transfer to a Department of Corrections facility was made on June 12, 2014.

La. C.C.P. art. 5188 allows costs to be assessed against an unsuccessful party who has been allowed to litigate without the payment of costs.